All right, our final case for argument today is 24-1884 Chinook Landing v. United States. Mr. McCoy, please proceed when you're ready. Thank you, Your Honor. May it please the Court. Jeff McCoy for Chinook Landing. The Bonneville Power Administration admitted that it did not have the right to use rear road across Chinook Landing's property. It was only after negotiations to acquire that right failed that the agency took the position that it had the right all along. Well, you're talking about the conversations that you outlined in your brief of statements made by the employees during the 2014 period, right? When you say they admitted, you're not admitting it here officially. Yes, but in 2011 and 2014, they did admit it both to Mr. Lund in saying that we need to get this done. This was in – on excerpts of record. Okay, the government has a million employees, like actually probably something like 40 million or 50 million employees, all right? So if some random employee says, oh, gosh, it looks like we don't have an easement to this. We've got to get you to give us one. But in fact, the government all along had an easement to that. What difference does it make that that employee said that? Well, these are the employees that are in charge of acquiring rights and assessing it, and it wasn't just one. It was the project surveyor, the right-of-way agent who's in charge of knowing where there's right-of-ways, and the field realty specialists all confirmed that they did not have. And I think this is where the Wable Ranch's case is instructive, which I submitted under 20-AJ, where there, same thing, low-level forest service employees posted a sign or made a statement, we don't have this. And then the Ninth Circuit held that that was enough to – But what if I conclude that there was an easement granted to use that road and that it was consistently used throughout the decades prior to your client's acquisition of his property? What does it matter that a couple of employees many decades later came along and said, oh, I don't know if we have an easement for this? Well, that goes to the merits of the claim, and I'm happy to address the merits of the claim. If you wanted to address something else. Well, no, I mean, just on that point, I mean, the district court here outlined, he credited, he believed, the director of the BPA said it's our practice years later, decades later, to try to minimize any conflicts by just trying to avoid exercising the power of eminent domain. And that does not sound like an unreasonable way to proceed, having your employees not go over to a landowner and say, hey, we've got these rights, you're out of there, we're in here, forget it, to come in and just, I mean, they had had these rights since 1955. Your Honor. So I'm just taking your point that you started off by making an assertion that the government, not the government, but that there was an admission. Yes, Your Honor. And I don't think that's clear from the record at all. Well, in the internal emails, Your Honor, they said, we don't have this, we need to get this done, we do not have an easement. I mean, again, the field realty specialist, Monica Stafflin, said this is a historical way of travel and not an easement. But again, I think there is, so in terms of the merits, the question is, can they bring the case? Because if it's outside the Quiet Title Act, then no title is quieted. If it's affirmed, if this court affirms on the basis of outside the statute of limitations, as the Supreme Court said in Block v. United States, no title is quieted for it. So is your only defense to the statute of limitations argument that the government admitted 30 years later, or however many years later, that you don't, that we said we didn't have an easement. So that means that there was no, that is dispositive of whether or not the clock started running in 1955? Yes, for the statute of limitations. As the Ninth Circuit said in Michael, and then reaffirmed, yes, it was an unpublished decision, but reaffirmed in Wable Ranch's cases, that statement, it opens if it appears that they have abandoned any claim to it, in which they said, when they say, we don't have an easement. No, that's completely wrong. The Ninth Circuit law is not that if it appears they may have abandoned, which is what you just said. The Ninth Circuit law, quote, clear and unequivocal abandonment of a government interest. Clear and unequivocal. So your argument that if it appears they may have abandoned, no, that wouldn't be water. Them saying we do not have an easement, we don't have an easement, is clear and unequivocal. And this is a very similar situation to Wable Ranch's. But, Your Honor, you wanted to address the merits of the claim. And the, because, yes, whether or not they can bring it is going to be separate from the merits of the claim. You said if you believe there has not been a, there has not been, believe that they had the easement all along. The easement cites two. It starts at the transmission easement, and page 8 shows from the deed the transmission line easement. And then there is an access easement, which comes here. It's about 50 feet off of Wilson River Highway, Highway 6 in Oregon. And it goes up to the transmission line, and then the transmission line goes across. So it kind of creates sort of a semicircle of access up here, and then over this side. So it grants transmission line, and then it grants the access easement. Now they never built the access easement. Didn't they? What about BPA Road? Isn't that what people understood to be the access easement? This is the BPA Road, Your Honor, on the west side of it. That has been built. Isn't that the 14-foot road that they talk about in the express grant of the easement, that they're going to build this road? There is two roads, because it grants on one side, from the west side up. And then they did not build this side on the east side, because if they did build it on the east side, there would be no issue here. Because rear road, this road, is the road that goes across my client's property. That's the one that they assert they have a right to use. So the express terms of the easement have an access right. Under Oregon law, the express terms of the easement control. But even beyond that, the court looked to reasonable necessity. That is a question of fact. At a minimum, this court should remand, because the BPA right-of-way agent, again, the person who is in charge of securing rights, assessing rights, said that there's another way to access the poles, but it would be difficult. Difficult is not necessity, and that's a tribal issue of fact. Maybe it is so difficult that they do need to use rear road. But we would counter with evidence that they do, that there is another way to access, and just because they don't want to build this road isn't the same as reasonable necessity. Another way to access across the original parcel, or across some parcels that have never been involved in this? Yes, so this was one parcel, and then it was subdivided. It was in 1955, and it was granted. The transmission line easement was granted. And the transmission line easement, again, my client's property near the center of this. Transmission line easement goes across the property. There's no dispute about that. And certainly they can drive up and down the transmission line easement, because it is longer than the poles. But in order to access it, the road on the southeast side, the easement on the southeast side, the access easement where they did not build a road, goes up to the transmission line easement, and then it goes across. And then on the west side, there is a road that they did build that is also another access. Okay, the district court did a pretty thorough analysis, and he concluded that when the December easement was granted in 1955, the original parties understood and intended that BPA would use the subject road as a reasonable route of entry to accomplish the purposes of the easement. So that was as of 1955. But, Your Honor, the 1955 going to the easement, which is on Excerpt of Record 99, the subject road refers to? But it doesn't matter. If the court found that the parties intended it to be, and if it was consistently used from 1955 on, which there doesn't seem to be a dispute about. I don't see you disputing or I don't see the district court resolving a dispute of fact over whether it was or was not used. Right, but, Your Honor, it was used with permission. And so it was not with right. It was a license or closer to a license than a right. You have nothing to support that. As I was scouring your briefs to try to find if there was, in fact, some sort of factual dispute, the only dispute that you create is as of 2014, which is way beyond the statute of limitations if the statute of limitations started to run in 1955. Well, Your Honor, the fealty royalty specialist who went back and looked at the historical use said that this is a historical way of travel, not an easement. Mr. Lund testified that because he grew up here, that the owner of the property let them along. I would like to go back to the question of subject road. The subject road, again, on page 99 is the easement. And so historical use, as the Court of Federal Crimes has held, if it's with permission, then it's not a taking because you have the permission. So just because they used it doesn't mean that they had necessarily a right to use it. This is rural Oregon. I mean, until disputes come up, people are usually generally pretty casual or pretty friendly and allow them to use it until an issue came up. But in terms of the subject road, the subject road refers to the... So if you look on page, excerpts of Record 98, transmission line easement and access road easement. And the subject road refers to the access road easement, saying that the subject road... Do you have to get when the adverse requirement has to apply here for you to prevail? The adverse? Well, in terms of... The only cases you cite to us are cases in which plaintiffs want to use government land. And this is the opposite. But again, Your Honor, Wabel Ranches was the case where it was a government-owned easement, alleged government-owned easement across private property. And in Werner v. United States, which is the 11th Circuit case, they drew no distinction between whether the government owns the fee or the property owner owns the fee. They cited to a District of Wyoming case in analyzing it, Elk Mountain Safari. So there is no... So in that terms, there's no difference. And I would say that Wabel Ranches, yes, again, it is unpublished. But I find it especially persuasive because that panel was the one that... That same panel that decided Wabel Ranches is the same panel that transferred this case here, Your Honor. So we can infer that if the... If my client did not have a takings claim, then we can infer that they would apply the same standard that they applied to Wabel Ranches for the question of whether this was outside the statute of limitations. Okay. I think you're into rebuttal time. Let me hear from Mr. Martin. Good morning. May it please the Court. Sean Martin for the United States. This Court should affirm the District Court's grant of summary judgment to the United States. I'll start on the merits. The District Court got it right that the 1955 easement encompassed BPA use of Rear Road, also known as the Subject Road, based on two key factors. First, the undisputed circumstances surrounding the 1955 easement. And secondly, the undisputed fact of BPA's continuous use of Rear's Road starting in 1955. But your opposing counsel suggested that was with permission, not through the easement. Well, that's the only evidence of any kind of permission requirement is what Mr. Lund said in 2014 in an email. Where he says he's revoking the permission. Right. That's the only evidence. There's no evidence of any kind of permission requirement going back to the circumstances surrounding the easement. In fact, it's undisputed that this easement in 1955, Your Honor, involved a right of entry, and that the only way to get to the BPA Road, which was the right to construct that road, was given in the 1955 easement. The only way to get to the starting point of the BPA Road to construct it and to access it was Rear's Road. Well, that part, okay, now you just touched on a little difficult issue for me, because that feels like a fact-finding, because I feel like that issue was disputed. And we're on summary judgment. And so if the court made that fact-finding, that would be improper. Well, there wasn't any dispute about it, Judge, that BPA put up evidence. The only way to get to it is? Well, the BPA Road, the 14-foot road that was constructed in 1955 per the grant of the right to construct it in 1955, that road starts at Rear's Road. So BPA Road was completely on the subject parcel, and it starts on Rear's Road on the parcel when it was built. Right, its origin point is on Rear's Road, several miles up hill and up from the Wilson River Highway. And then that 14-foot-wide BPA Road goes up to the transmission facilities. It's a way to access the High Line, which is quite a bit higher. And is that the road that the easement is talking about, is this BPA Road? I think I heard opposing counsel to say that there was some other road that never got built. I think my friend is incorrect. The district court correctly recognized that there was a right to build the road in the 1955 easement, and there was testimony, there was evidence, undisputed, that BPA followed up on the easement grant for that road and built the road. And it's called BPA Road. It's called BPA Road. So the district court thought that was a really key fact on the merits of the claim, that it was elemental to reach the BPA Road, you had to use the Rear's Road, so that the right of entry had to encompass Rear Road. I don't want to sideways you if you have more to say in response to the question, but I don't think it matters. But I'm having a hard time distinguishing between the merits case and the statute of limitations case. To me, it's the same questions are asked and answered to get you to both places, right? Everything you said goes to not just the merits, but it would go to the issue of the statute of limitations, whether the statute of limitations had run. I think you're right, Judge, there is some overlap, because I think the fact that the circumstances in 1955 and the immediate use of Rear's Road beginning in 1955, I think that does get to notice, that overlaps over with the notice requirement under the statute of limitations. But I believe the district court correctly looked at the two issues, the merits of what the easement encompassed or not, and the statute of limitations separately. Well, they did in separate pages, but a lot of the second part on the merits refers back to the kind of factual analysis they did in the first part. Anyway, yes? Right, right. But I think, but again, Judge, there wasn't a dispute with regard to those circumstances in 1955. So is it your view with respect to the statute of limitations, so everything that your friend is raising with respect to 2014 is just too little, too late? I mean, under the statute of limitations, that it, one, are you saying it doesn't matter what they said, or that what they said wasn't sufficient evidence of anything? Well, both. I mean, it doesn't shed light on the circumstances in 1955, and it doesn't negate the decades of use of Rear Road to get to the BPA Road. So it's not illuminative of the circumstances in 1955, and I think it's quite clear that it's not enough because it's not, on the statute of limitations, because it's not a formal, unambiguous abandonment of any right. I think the fact that there were some employees who were confused and don't know the ins and outs of these. So is that sufficient? You know, the Chief alluded to the fact, like, if they're reasonable factual disputes, summary judgment would not be appropriate. So is that, you don't see that as a reasonable factual dispute? I think any confusion is immaterial to the merits because it doesn't illuminate the scope of the easement as it was understood in 1955 and as it was used beginning in 1955. I think it was you, Judge Hall, you briefly mentioned that, well, Mr. Lund said there were some other roads that he thought would be alternatives, but I think you raised a good point that those are on other people's property, and we're talking about this easement that Chinook's predecessors in interest gave a right of entry, and so that's what we're talking about. And the fact is there is a reasonable right of entry. It's a historic use using this Weir's Road. It's irrelevant to go look and require BPA then to have to acquire 3,000 feet, linear feet of other roads on somebody else's private property because the right of entry somehow doesn't mean it's a right of entry after all. My friend raised the Weible Ranches case from the Ninth Circuit. I think that's quite distinguishable. That was a Rule 12 matter, not a Rule 56 case after the completion of discovery. That only involved the statute of limitations. It didn't involve the merits. In addition, facts in Weible were quite a bit different. That wasn't a low-level Forest Service employee doing something. It was an official BLM press release issued by the same office that signed an original easement in the 1960s. So at least for Rule 12 purposes, in the circumstances of that case, the Ninth Circuit and its unpublished panel thought that there wasn't enough to dismiss the case. Here, you may have stray remarks in the 2010s by some lower-level employees, but you don't have anything on the same level of formality as a recorded easement that gave BPA a right of entry. Can a government employee ever do something that would cause the United States to lose right to property through abandonment? Could that ever happen? Can the United States abandon property? Yes. It can, but there have to be formalities because it's not something to be taken lightly. Can it do it through the actions of government employees without authority? I would say no. I would say no. A really salient case here is the Kingman Reef case from the Ninth Circuit, where it was an ownership dispute. And as in here, the plaintiff claimed a fee title interest, and the United States did too. And the Ninth Circuit opinion, this is from 2008, went through various confusing communications from some government employees, but held, I would also add at Rule 12, that that didn't rise to the level of a formal and unambiguous relinquishment, that government interests in here, BPA running the Pacific Northwest power grid is an important public interest, and BPA bargained with the predecessors decades ago to get these rights so it could run the grid safely and effectively. And that is something that we should protect and require formalities before the United States is going to be deemed to have formally abandoned that interest. Just a factual question. Was the original owner from 1955 the same owner until Mr. Wong took the property in 2004?  They were intermittent? There were others. There were others. And I assume we don't have any cases involving those other people. Pardon me? I assume there are no cases of challenges. There's no evidence that they disputed. Gosh, if anybody knew that BPA was using Rear's Road and they didn't like it, they'd be the ones, because they're the ones who wrote out that easement and gave BPA right of entry, and knew that BPA needed to use Rear's Road to build the BPA road, but they didn't have any objection. Okay, anything further? Nothing further. Thank you. Thank you, Your Honor. I think the Chief got to the main question here is that there are disputed facts. And as evidence of the disputed facts, you can look at Mr. Wong's declaration, also the Declaration of Trial Council, that submitted evidence in order to cause disputed facts. Again, so this is on page excerpts of record. Is there a disputed fact over whether they needed to use this road to access the BPA road? Yes, there is. Where is that evidence of this is, in fact, a disputed fact? Well, so attached to it, excerpts of record 65, the BPA right of way of agent, which I would argue is not a low-level employee because she had the authority to acquire an easement. So certainly, I think it is reasonable to believe that she has the right to assess whether or not there is an easement. This was attached to Mr. Wong's declaration. It was an email to Mr. Wong, and she said there is another way to access the poles. To access the what? There is another way to access the poles instead of across Rear Road. Yeah, but was there another way to access the BPA road? That's a different question. Yes, Your Honor, because No, where is the evidence? I don't want to hear your attorney argument about it. I want to hear where is the evidence in this record that creates a disputed fact about whether there is another way to access the BPA road. Okay, Mr. Lund's declaration on page Page and paragraph. Yes, so on page excerpts of record 64, he drew this map, and the black lines on that map are the access easements as defined by the deed. I'm not asking you what Mr. Lund thinks the easements are. I think I'm on page 64, but maybe a different 64? SCR 64? What do you want me to look at? Excerpts of record 64. Where is that? Attached to different? Oh, this one. Okay. Here, 64. And comparing this to the deed, they have an access road. There is What is 64? Exhibit 4? Yes, Exhibit 4. This is a map that Mr. Lund created that shows the red, blue, and purple lines are old timber roads. But the black lines are the access easements that they have. This is what he thinks are the access easements. That's not my question. My question to you is what she found, or what this district court found, and what the government argued is there's no dispute of fact that to access the BPA road, you have to use this Reacher Road. So where is there, you're saying that is in fact disputed. Where is the dispute about that? Where are the facts that show that's in dispute? So, all right. If you turn to Mr. Lund's declaration. What page? On page 51. Paragraph 8. A BPA road engineer, who I recall as Chad Maxwell, told me during a meeting on July 23rd. Page 51, what paragraph number? I'm sorry. Eight. Okay, got it. A BPA road engineer, who I recall was Chad Maxwell, told me during a meeting on July 23rd, 2014, that he used another road to access the easement area. Well, the easement area is a big area. So maybe there was some other road to access the easement area. What I'm asking you is very specific. Is there evidence that there's a dispute of fact over the need to use Reacher Road to access the BPA road? Not the whole easement area. The easement area is larger. There might have been other ways to get to the easement area. Yes, but the easement area has... So, well, first, the easement area can... You can use the easement area. It is wide. And the easement area connects from the Southeast Access Road to BPA. I'm asking a very specific question. Answer me yes or no. Is there evidence that there is a dispute of fact over whether you need to use Reacher Road to access the BPA road? Yes, Your Honor. Yes. Where is the evidence? Because, Your Honor, they can use their easement, the transmission line easement, to access the BPA road. There's no road there, though, right? Right. They haven't. They could. They have a right to build on the Southeast... Yeah, and what the court relied on was not... It was impossible to get there through airplane, helicopter, or whatever. He said since 1955, it's the most reasonable route of access to the transmission line. But there is a difference between what is the easiest or most reasonable to what is reasonably necessary. And that is a question of fact under Oregon law. Well, except the... He concludes on the next page that there's no... Lund does not dispute the evidence of these original circumstances and uses. Instead, he brings us to the 2014 statements. That's where the district court said there's no dispute of fact with respect to those initial... And Mr. Lund's declaration brings those dispute of facts into play. Okay. Thank you, counsel. I thank both counsel. This case is taken under submission.